UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GARRETT L. BROWN,

    Plaintiff,

v.

PREMIER CHEMICALS, LLC,

    Defendant.

Case No. 3:08-CV-00635-KJD-GWF

**ORDER**

    Currently pending before the Court is Defendant Premier Chemicals, LLC's ("Premier") Motion for Summary Judgment (##40, 41). Plaintiff filed a Response in Opposition (#50), to which Defendant filed a Reply (#57). Additionally before the Court is Plaintiff Garrett L. Brown's ("Brown") Motion for Summary Judgment (#43). Defendant filed a Response in Opposition (#47), to which Plaintiff filed a Reply (#53). Because the Motions involve competing claims for summary judgment arising from the same issues and operative facts, the Court considers both Motions, together with their respective Responses and Replies, and issues its ruling jointly herein.

**I. Background**

    Plaintiff Brown filed his Complaint in this action on September 15, 2008, alleging that his employer violated the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq*. It is undisputed that Defendant is covered by the FMLA and that Plaintiff qualified for and was entitled to

leave under the provisions of the FMLA.  Plaintiff alleges specifically, that Defendants interfered with his rights under the FMLA by using his taking of FMLA qualified leave as a negative factor in its decision to terminate his employment.

Premier is a producer and distributer of a wide array of chemical products derived, in part, from materials mined in Gabbs, Nevada.  Plaintiff has been employed with Premier intermittently over the years from 1999–2007, to perform mill maintenance services and mill equipment repair at Premier's Gabb facility.  In 2003 Premier instituted an attendance policy under which employees were assigned points for missing work under various circumstances.  The policy provided that employees who reached nine (9) points in a rolling 12-month period would be terminated.  Under the policy, employees received one (1) point for being absent from a scheduled shift or arriving sixty minutes or more late; half a point (.5) for arriving less than 60 minutes late; and three (3) points for being absent without a two-hour notice ("no call, no show").  Employees received a written reprimand when they reached seven points.  Brown's employment record was fraught with multiple absences and written reprimands.  Between January 17, 2005, and May 2007, Brown received nine (9) reprimand notices.  (#41 Ex. 10.)

On July 9, 2007, Brown took his wife ("Mrs. Brown") to the emergency room for medical treatment, and she was admitted to the hospital.  On July 12, 2007, Brown did not go to work, but contacted Defendant to request his last "Sick Vacation Day" to cover the absence.  (#41 at 11.)  When Brown went in to work to inform Defendant of his wife's condition, he was given FMLA forms and asked to fill them out correctly and return them.

Plaintiff did not return the FMLA forms, and did not show up for work on July 14 and 15, 2007.  Resultantly, Brown was assessed one point for each day, which brought him to a total of 10.5 points under the attendance policy.  Plaintiff was asked to meet with a supervisor at work on July 17, 2007, where he was allegedly informed that he was terminated for having too many points under the attendance policy.  Brown then contacted a Union representative, who set up a meeting with members of Premier's management for July 19, 2007.  At the meeting, it was agreed that if Plaintiff

were to fill out the appropriate FMLA forms and return them by 4:00 that day, he would be allowed to return to work.  Plaintiff went to the hospital to get the paperwork filled out, yet did not return to work by 4:00 as agreed, (and when he was supposed to begin his next shift).  As a result, Brown was assessed another three (3) points for a no call, no show, which accumulated more points under the attendance policy, and his supervisor "considered him terminated".  (#41 at 9.)  Brown eventually showed up for his shift, after his supervisor had left, at around 6:00 p.m.  Because his supervisor had already left, Brown was told by the lead on his work shift to go home and, per the supervisor's instructions, bring the FMLA paperwork the next day.

Brown brought the FMLA Certification the next day, and retroactively requested continuous leave between July 13–15, 2007.  The Supervisor found the certification to be deficient for numerous reasons, including *inter alia* that the doctor who had filled out the certification had not checked the box indicating that the "employee is currently needed to care for the patient" or indicating that "intermittent leave is medically necessary for the employee." (#41 at 10.)  The Supervisor also found the certificate deficient in that it failed to cover the necessary dates because it stated that Mrs. Brown's condition ended on July 14, 2007, while Brown had been absent on July 15 and 19, 2007.  (Id.)

The Supervisor informed Brown that the paperwork was deficient and told him that he needed to get the proper paperwork and return it to her before he started work that day, July 20, 2007.  As a result, Brown contacted a general practitioner who had not treated Mrs. Brown in the hospital, but who agreed to see her that day.  The general practitioner examined Mrs. Brown and while he failed to sign the certification, he "initialed two changes" and Plaintiff faxed the forms to the Supervisor.  Upon review, the Supervisor found that the certification was still deficient, in that the doctor had scratched out the prior "None of the Above" designation and changed it to indicate "Intermittent Leave" (#41 at 11.)  Williamson noted that although an "ambiguous handwritten 7/20/07 date was in Section 6 of the form," the certification did not indicate the dates when intermittent leave was allegedly required.  (Id.)  Brown did not show up for work on July 20, 2007,

3

and failed to contact Defendant prior to not coming in.  Accordingly, he accrued three (3) more points under the attendance policy.[1]  Brown allegedly showed up for work on July 21, 2007, when he was informed that he was terminated.

After his termination, Brown again contacted the Union representative and another meeting was scheduled between the Union representative, Premier management and Plaintiff for August 1, 2007.  According to Defendant, prior to the meeting, Premier had received a letter from Mrs. Brown's hospital treating physician, who stated that he concurred with the doctor that had filled out the initial certification stating that FMLA leave was not necessary.  (#41 at 12.)

As a result of the meeting between the Union representative, Brown, and Premier management, Brown was given another set of FMLA forms, and agreed that Premier would consider allowing him to return to work if he properly completed the forms and submitted them to Premier on that same day.  Brown took the forms to the same general practitioner that had made the abbreviated changes to the initial form, and faxed the third completed certification form to the Supervisor early that evening.  The Supervisor again found the form to be deficient due to various inconsistencies regarding whether Mrs. Brown had required consistent or intermittent care, the probable duration of her condition, and regarding which days Plaintiff was allegedly needed to provide care for Mrs. Brown.  (#41 at 13.)  Resultantly, Plaintiff's termination became final on July 21, 2007.

Subsequent to his termination, on or about August 13, 2007, Plaintiff wrote a letter to his wife's hospital treating physician, enclosing FMLA information.  The hospital treating physician responded, affirming his previous concurrence that FMLA leave was unwarranted in Plaintiff's situation.  Plaintiff later filed a complaint with the United States Department of Labor ("DOL") claiming that Premier had violated his FMLA rights.  Premier filed a response describing its decision pursuant to the attendance policy.  The DOL did not pursue the complaint.  The Union also withdrew

---

[1] Brown avers that he did not report to work because an unspecified individual allegedly told Brown that he had been terminated.

4

the grievance it had filed on Brown's behalf stating that it "did not find any merit to pursue arbitration." (#41 at 15.)

**II. Standard of Law for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the nonmoving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

**III. Analysis**

The FMLA provides that an eligible employee shall be entitled to twelve work weeks of leave during any twelve-month period due to the birth of a child, adoption, to care for the spouse, son, daughter, or parent of the employee, or because of a serious health condition that makes the employee unable to perform the function of his or her position.  29 U.S.C. § 2612.  It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a).[2]

Employers cannot use the taking of FMLA leave as a "negative factor" in employment actions and decisions.  29 C.F.R. § 825.220(c) (2006); Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001).  Thus, an employee can prevail on an FMLA interference claim by showing "by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]."  Xin Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003) (citation omitted).  "Where an employee is subjected to 'negative consequences . . . simply because he has used FMLA leave,' the employer has interfered with the employee's rights." Id. (citation omitted).  An employer may require that an employee's request for leave be supported by medical certification.  29 U.S.C. § 2613(a).  If an employee asks for leave because of his or her own serious health condition, or that of a child, spouse, or parent, the employer may require that the request be supported by timely certification from the appropriate treating health care provider.  29 U.S.C. § 2613(a); see also Bailey, 275 F.3d at 1185–86.  "If an employer has reason to doubt the

---

[2] To establish a prima facie case of retaliation in violation of the FMLA, a plaintiff must establish: (1) he engaged in a protected activity under the FMLA; (2) he suffered adverse action by the employer following the protected activity; and (3) the adverse employment action was causally linked to the protected activity. Raymond v. Albertson's Inc., 38 F.Supp.2d 866, 869 (D. Nev 1999). The Court does not delve into a retaliation analysis here however, as it finds that Plaintiff's Complaint brings only a claim for interference.

validity of a medical certification, the employee may be required to obtain a second medical opinion at the employer's expense." Bailey, 275 F.3d at 1186. "The employer is permitted to designate the health care provider to furnish the second opinion." 29 C.F.R. § 825.307(b)(2); see also 29 U.S.C. § 2613(c)(1). The only limitation listed by the statute is that the health care provider "shall not be employed on a regular basis by the employer." 29 U.S.C. § 2613(c)(2).

29 C.F.R. § 825.305(d) provides consequences if an employee fails to cooperate with the certification process. "If the employee fails to provide the employer with a complete and sufficient certification, despite the opportunity to cure the certification . . . or fails to provide any certification, the employer may deny the taking of FMLA leave." 29 C.F.R. § 825.305(d).  That provision further states that it "will apply in any case where an employer requests a certification permitted by these regulations, whether it is the initial certification, a recertification, a second or third opinion, or a fitness for duty certification, including any clarifications necessary to determine if such certifications are authentic and sufficient." Chapen v. Munoz, 2009 WL 511114 *4 (D. Nev. Feb. 25, 2009)

The evidence here demonstrates that Plaintiff failed to supply sufficient certification under 29 CFR 825.305(c) for the days he was absent that would keep him within the attendance policy's pre-termination limit.  Subsequently, and through what may be considered a tragedy of errors, Plaintiff continued to accumulate points under the attendance policy in spite of his efforts to prove said absences qualified as FMLA leave.

The Court finds that Defendant has provided substantial evidence to overcome Plaintiff's allegation that Defendant used qualified FMLA leave time to account for the points Plaintiff accumulated in Premier's decision to terminate his employment.  Accordingly, Plaintiff cannot show by a preponderance of the evidence that his taking of any FMLA-protected leave constituted a negative factor in Premier's decision to terminate him, and accordingly, his Motion for Summary Judgment is denied.  Moreover, the evidence demonstrates that Premier based its decision to terminate Plaintiff from employment based solely on its attendance policy, and that no FMLA

qualified time was used to account towards Plaintiff's point accrual leading to his termination. Accordingly, the Court finds that Defendant's Motion for Summary Judgment should be granted.

**IV. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant Premier Chemicals, LLC's Motion for Summary Judgment (##40, 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Garrett L. Brown's ("Brown") Motion for Summary Judgment (#43) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to file Response (#44) is **GRANTED**, nunc pro tunc.

DATED this 30th day of September, 2010.

_____
Kent J. Dawson
United States District Judge

8