1

2

3

4

5

6

7

8

9                          **UNITED STATES DISTRICT COURT**

10                              **DISTRICT OF NEVADA**

11

12   GARRETT L. BROWN,

13          Plaintiff,                              Case No. 3:08-CV-00635-KJD-GWF

14   v.                                             **ORDER**

15   PREMIER CHEMICALS, LLC,

16          Defendant.

17

18          Before the Court is the Motion for Summary Judgment (## 84, 85) filed by Defendant

19   Premier Chemicals, LLC.  Plaintiff filed Responses (## 89, 96) and Defendant filed an Reply (#98).

20          Also before the Court are the Motion for Hearing (#81), Second Motion to Extend Time

21   (#88) and Motion to Strike (#90).

22   I.  Background

23          A. Procedural Background

24          This Court originally granted summary judgment in this case based solely on Plaintiff's

25   failure to provide proper Family Medical Leave Act ("FMLA") certification pursuant to 29 C.F.R.

26

1    825.305(c).  The Court did not address Defendant's other arguments in support of summary judgment.

2            On May 1, 2012, the Ninth Circuit reversed entry of summary judgment on the FMLA

3    certification issue relied upon by this Court, stating that "[t]he district court granted summary

4    judgment in error, because a genuine issue of fact exists as to whether the August 2 [FMLA]

5    certification form was sufficient under 29 C.F.R. § 825.306."

6            After the remand, Defendant filed a Motion requesting that the Court rule on the unaddressed

7    arguments contained in its original motion for summary judgment.  The Court directed Defendant to

8    re-file its motion for summary judgment.  Defendant re-filed the original motion in its entirety (#85),

9    without any modifications in light of the Ninth Circuit's ruling.  Plaintiff moved to strike the portions

10   of the motion relating to the already-decided issue.  The parties then stipulated that the scope of the

11   re-filed motion would be limited to arguments on pages 16:22-19:20 and 26:7-28:15 of the Motion

12   for Summary Judgment.  Accordingly, the Court only considers argument in those sections.

13           B.  Factual Background

14           Plaintiff filed his Complaint in this action on September 15, 2008, alleging that his employer

15   violated the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq*.  It is undisputed that

16   Defendant is covered by the FMLA and that Plaintiff qualified for and was entitled to a period of

17   leave under the provisions of the FMLA.  Plaintiff alleges specifically, that Defendant violated his

18   rights under the FMLA when it counted FMLA qualified leave as a negative factor in its decision to

19   terminate his employment.

20           Defendant is a producer and distributer of a wide array of chemical products derived, in part,

21   from materials mined in Gabbs, Nevada.  Plaintiff was employed with Defendant intermittently

22   between 1999–2007, to perform mill maintenance services and mill equipment repair at Defendant's

23   Gabb facility.  In 2003, Defendant instituted an attendance policy under which employees were

24   assigned points for missing work under various circumstances.  The policy provided that employees

25   who reached nine (9) points in a rolling 12-month period would be terminated.  Under the policy,

26   employees received one (1) point for being absent from a scheduled shift or arriving sixty minutes or

1   more late; half a point (.5) for arriving less than 60 minutes late; and three (3) points for being absent

2   without a two-hour notice ("no call, no show").  Employees received a written reprimand when they

3   reached seven points.  Plaintiff's employment record was fraught with multiple absences and written

4   reprimands.  Between January 17, 2005, and May 2007, Plaintiff received nine (9) reprimand notices.

5        On July 9, 2007, Plaintiff took his wife ("Mrs. Brown") to the emergency room for medical

6   treatment, and she was admitted to the hospital.  On July 12, 2007, Plaintiff did not go to work, but

7   contacted Defendant to request his last "Sick Vacation Day" to cover the absence.

8        Plaintiff did not show up for work on July 14 and 15, 2007.  Plaintiff was asked to meet with

9   a supervisor at work on July 17, 2007, where he was allegedly informed that he was terminated for

10  having too many points under the attendance policy.  Plaintiff then contacted a Union representative,

11  who set up a meeting with members of Defendant's management for July 19, 2007.  At the meeting,

12  it was agreed that if Plaintiff were to return them by 4:00 that day, he would not be terminated.

13  Plaintiff did not return to work by 4:00 as agreed, (and when he was supposed to begin his next

14  shift).  As a result, Plaintiff was assessed another three (3) points for a no call, no show, which

15  accumulated more points under the attendance policy, and his supervisor "considered him

16  terminated."  Plaintiff eventually showed up for his shift, after his supervisor had left, at around 6:00

17  p.m.  Because his supervisor had already left, Plaintiff was told by the lead on his work shift to go

18  home and return to discuss the situation the next day.

19       Plaintiff returned to work the next day, and retroactively requested continuous leave between

20  July 13–15, 2007. The Supervisor informed Plaintiff that he would need to submit proper paperwork

21  relating to requested leave before he started his shift that day, July 20, 2007.  Plaintiff did not show

22  up for his shift on July 20, 2007, and failed to contact Defendant prior to not coming in.

23  Accordingly, he accrued three (3) more points under the attendance policy.[1]  Plaintiff allegedly

24  showed up for work on July 21, 2007, when he was informed that he was terminated.

25   

26      [1]Plaintiff avers that he did not report to work because an unspecified individual allegedly told Plaintiff that he had been terminated.

3

1      Plaintiff later filed a complaint with the United States Department of Labor claiming that

2 Defendant had violated his FMLA rights.  Defendant filed a response describing its decision pursuant

3 to the attendance policy.  The DOL did not pursue the complaint.  The Union also withdrew the

4 grievance it had filed on Plaintiff's behalf stating that it "did not find any merit to pursue

5 arbitration."

6 II.  Discussion

7      A. Standard for Summary Judgment

8      Summary judgment shall be granted if there is no genuine dispute as to any material fact and

9 the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving

10 party bears the initial burden of showing the absence of a genuine dispute of material fact.  See

11 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to

12 set forth specific facts demonstrating a genuine factual dispute for trial.  See Matsushita Elec. Indus.

13 Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

14      All justifiable inferences must be viewed in the light must favorable to the nonmoving party.

15 See Matsushita, 475 U.S. at 587.  However, the nonmoving party must produce specific facts, by

16 affidavit or other evidentiary materials similar to those described in Rule 56, to show that there is a

17 genuine dispute for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Summary

18 judgment motions can only be defeated by admissible evidence.  In re: Oracle Corporation Securities

19 Litigation, 627 F.3d 376, 385 (9th Cir. 2010). "A conclusory, self-serving affidavit, lacking detailed

20 facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  Nilsson

21 v. City  of Mesa,  503 F.3d  947,  952  n. 2 (9th Cir.  2010) (citation  omitted).  An affidavit that

22 contradicts the plaintiff's own deposition testimony is not sufficient to defeat summary judgment.

23 Orr v. Bank of America, 285 F.3d 764, 780 n. 28 (9th Cir. 2002).  Furthermore, "when opposing

24 parties tell two different stories, one of which is blatantly contradicted by the record, so that no

25 reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

26 ruing on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007)

1    Summary judgment shall be entered "against a party who fails to make a showing sufficient

2 to establish the existence of an element essential to that party's case, and on which that party will

3 bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted

4 if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

5    B. Qualification for Protection Under FMLA

6    A court may grant summary judgment when it finds that there is no genuine dispute of fact

7 that the requirements of FMLA have not been met. Tellis v. Alaska Airlines, Inc., 414 F.3d 1045,

8 1047 (9th Cir. 2005) (upholding summary judgment where plaintiff failed to show that he was

9 involved in "actual care" as contemplated by the statue). Under the FMLA, an eligible employee is

10 entitled to up to 12 weeks of leave during a 12-month period "to care for" a family member with a

11 "serious health condition." 29 U.S.C. § 2612(a)(1)(C).

12    1. Serious Health Condition

13    A "serious health condition" is "an illness, injury, impairment, or physical or mental

14 condition" involving either "inpatient care in a hospital or similar facility or *continuing treatment by*

15 *a health care provider*."[2] 29 U.S.C. § 2611(11) (emphasis added). Regulations promulgated by the

16 Secretary of Labor in turn provide a definition of "continuing treatment by a health care provider"

17 that includes, in relevant part:

18    A period of incapacity (i.e., inability to work ...) of more than three
   consecutive calendar days, and any subsequent treatment or period of
19    incapacity relating to the same condition, that also involves:

20        (A) Treatment two or more times by a health care provider ...; or
        (B) Treatment by a health care provider on at least one occasion
21        which results in a regimen of continuing treatment under the
        supervision of the health care provider.

22

23

24

25    _____

26    [2] Congress amended the FMLA in 2008, and the Department of Labor ("DOL") amended the FMLA
   regulations in 2009. The statute and regulations are cited as they were in effect at the time of the events at issue.

29 C.F.R. § 825.114(a)(2)(I). The regulations further provide that "[a] regimen of continuing treatment includes, for example, a course of prescription medication ( e.g. , an antibiotic)" 29 C.F.R. § 825.113(b).

The parties do not dispute that Mrs. Brown had a serious health condition at the time that she was receiving inpatient care at the hospital.   Plaintiff asserts that has Mrs. Brown was discharged with instructions to take Tylenol and a prescription antibiotic and return for a  follow-up visit. According to Plaintiff, this constitutes "a regimen of continuing treatment" which establishes "continuing treatment by a healthcare provider" sufficient to demonstrate that Mrs. Brown continued to have a "serious health condition" as contemplated by FMLA.

Defendant asserts that Mrs.  Brown's serious health condition ended when she was discharged from the hospital on July 14, 2007.  At the time of discharge, Mrs. Brown signed a form that indicated that she had no dietary or activity restrictions, and that she did not need home health visits.  An evaluation given on the date of discharge noted no impairment of Mrs. Brown's sensory perception, gave her the highest possible score for activity (stating that she "walks frequently"), gave her the highest score for mobility, and noted no apparent problems with friction and shear.

In essence, Defendant argues that Mrs. Brown was not incapacitated at the time she left the hospital and that  "the course of prescription medication is alone sufficient to establish the ongoing duration of the serious medical condition."  However, the FMLA regulations unambiguously state that a serious health condition for purposes of the statue can be established by when an employee is treated by a health care provider on at least one occasion and then given a course prescription medication.  Accordingly, the Court determines that Mrs. Brown was suffering from a "serious health condition" as defined by the FMLA.

### 2. Care by Plaintiff

The Department of Labor's regulations implementing FMLA explain that the phrase "to care for" a family member:

6

1
2
3
4
> encompasses both physical and psychological care. It includes situations
> where, for example, because of a serious health condition, the family
> member is unable to care for his or her own basic medical, hygienic, or
> nutritional needs or safety, or is unable to transport himself or herself to
> the doctor, etc. The term also includes providing psychological comfort
> and reassurance which would be beneficial to a child, spouse or parent
> with a serious health condition who is receiving inpatient or home care.

5 29 C.F.R. § 825.116(a). Interpreting this rule, the Ninth Circuit has held that caring for a family

6 member with a serious health condition "involves some level of participation in ongoing treatment of

7 that condition." Marchisheck v. San Mateo County, 199 F.3d 1068, 1076 (9th Cir.1999). "[A]s a

8 matter of law, providing care to a family member under the FMLA requires some actual care."

9 Tellis, 414 F.3d at 1047.

10     Plaintiff offers the testimony of Mrs. Brown that she "did not want to be alone," that she "felt

11 weak" and "did not feel like I could get out of bed" and that Plaintiff's presence made her feel better.

12 Further, she testified that Plaintiff cooked, cleaned, and comforted her. Plaintiff further asserts that

13 the Mrs. Brown was afraid that she would have a "flair up," which would require an immediate

14 return to the hospital. Plaintiff argues that summary judgment is not appropriate and cites to

15 Scamihorn v. General Truck Drivers, 282 F.3d 1078, 1086 (9th Cir. 2002). In Scamihorn the Court

16 found that an issue of fact existed about whether the plaintiff cared for his father where the father

17 could meet his own physical needs, but the plaintiff provided emotional support and other assistance

18 such as driving his father to appointments.

19     Defendant argues that Plaintiff did not need to physically care for Mrs. Brown because

20 medical records provide no indication that she was unable to care for her own basic medical,

21 hygienic, and nutritional needs. Defendant further asserts that any beneficial psychological comfort

22 and reassurance Plaintiff provided was not connected with home care and is not covered by the

23 FMLA.

24     The Court has determined that Mrs. Brown was suffering from a serious health condition as

25 defined by the FMLA. There is a dispute of fact about whether Mrs. Brown could meet her basic

26 needs, (such as transportation to the hospital in an emergency), whether Plaintiff actually cared for

7

1  Mrs. Brown, and whether Plaintiff provided beneficial psychological care relating to the home care.

2  Accordingly, the Court cannot determine this issue as a matter of law and summary judgment is

3  denied.

4  III. Conclusion

5       **IT IS HEREBY ORDERED** Defendant's Motion for Summary Judgment (## 84, 85) is

6  **DENIED**.

7       **IT IS FURTHER ORDERED** that the parties file a joint pretrial order within 30 days from

8  the date of this order.

9       **IT IS FURTHER ORDERED** that the Motion for Hearing (#81), Second Motion to Extend

10  Time (#88) and Motion to Strike (#90) are **TERMINATED**.

11       DATED this 4th day of February 2013.

12

13

14  _____

15  Kent J. Dawson
   United States District Judge

16

17

18

19

20

21

22

23

24

25

26